ANGERS, Plaintiff and Appellant, vs. SABATINELLI and others, Defendants and Respondents: EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Defendant and Appellant: SCHMIDT, Receiver of the Nelli Wrecking Company, Intervening Defendant.*

*November 17, 1944—January 16, 1945.*

* Motion for rehearing denied, without costs, on May 15, 1945.

376

378

380

*Samuil Nissenbaum* of Milwaukee, for the appellant Charles S. Angers.

*Carlyle B. Wurster* of Merrill and *James E. McCarty* of Milwaukee, for the appellant Employers Mutual Liability Insurance Company.

*L. L. Rieselbach* of Milwaukee, for the respondents Nick Sabatinelli, Gronik, Inc., and Meyer Gronik.

*A. L. Skolnik* of Milwaukee, for the respondents Louis Hirsch, Morris Stern, and Northwestern Iron & Metal Company.

BARLOW, J. This action was before this court on two former appeals, and was reported in 235 Wis. 422, 293 N. W. 173, and 239 Wis. 364, 1 N. W. (2d) 765. The rights of the plaintiff are determined by the result of appellant cross complainant's claim, and we will therefore give first consideration to that matter.

There is considerable controversy between the parties as to the nature of this action, respondents contending that appellant cross complainant, Employers Mutual Liability Insurance Company, seeks to recover damages by reason of conspiracy on the part of respondents, which it has no right to maintain. An examination of appellant cross complainant's necessarily long cross complaint gives some reason for respondents taking this position, where in item 16 of its prayer for relief appellant cross complainant asks that the amount of damages sustained by it and other creditors of Cream City Wrecking Company be determined, and for judgment against the respondents jointly and severally for the damages so found. However, giving consideration to other portions of the cross complaint and prayer for relief, we find that it asks that the chattel mortgage bearing date August 5, 1935, and the obligation purporting to be secured thereby, be determined to be void and unenforceable, and that the real-estate mortgage bearing date December 2, 1935, and the obligation thereby secured, be determined to be void and unenforceable; and other items of relief asked are consistent with an action to set aside an alleged fraudulent conveyance of the real estate and to annul alleged fraudulent obligations in favor of respondents. It is con-

sidered that the trial court properly proceeded with the trial on the theory that this was an action under the Uniform Fraudulent Conveyance Act, authorized by sec. 242.10, Stats., which provides:

"Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may (a) restrain the defendant from disposing of his property, (b) appoint a receiver to take charge of the property, (c) set aside the conveyance or annul the obligation, or (d) make any order which the circumstances of the case may require."

The questions to be determined on this appeal are whether there was a fraudulent conveyance of real estate and personal property by the Cream City Wrecking Company or Louis Hirsch, as assignee for the benefit of creditors of Cream City Wrecking Company, which should be set aside, and whether there are any fraudulent obligations outstanding against Cream City Wrecking Company which should be annulled, which were intended to hinder, delay, and defraud creditors of Cream City Wrecking Company from realizing on their claims.

From an examination of the record it is evident that the trial court properly stated in his opinion:   .

"Upon the trial the court permitted the widest latitude in the introduction of proof of circumstances surrounding the above-named transactions which might throw light upon the issue of fraud and conspiracy to defraud the creditors of the Cream City Wrecking Company on the part of the defendants named.

"Defendant and cross complainant, Employers Mutual Liability Insurance Company, probed most searchingly into every phase and aspect of all circumstances bearing upon the

question of the existence of a scheme to defeat the rights of the creditors of the Cream City Wrecking Company."

Appellant and cross complainant, Employers Mutual Liability Insurance Company, contends, (1) that the findings of fact are not conclusive because they omit material and issuable facts presented by the pleadings and evidence, and (2) that the trial court's findings of fact are against the clear preponderance of the evidence. It may be well to state the rules of law to be applied to the evidence in examining these contentions. In an action to vacate a conveyance for fraud or to annul a fraudulent obligation, the burden rests upon the party attacking it to establish fraud by clear, satisfactory, and convincing evidence. *Massey v. Richmond* (1932), 208 Wis. 239, 242 N. W. 507; *Miller v. Lange* (1940), 234 Wis. 460, 290 N. W. 618. In *Massey v. Richmond, supra,* the court said (p. 249):

"Transactions made in the ordinary course of business upon which no evidence of fraud, overreaching, or wrongdoing is stamped, are not to be lightly set aside. The burden of proof is upon the parties attacking the conveyance to show by clear and satisfactory evidence that the conveyance was fraudulent and intended to hinder, delay, and defraud creditors."

It is unnecessary to cite authorities to the elementary proposition that findings of a trial court upon appeal will not be disturbed unless against the great weight and clear preponderance of the evidence.

As to appellant's first contention, that the findings of fact are not conclusive because they omit material and issuable facts presented by the pleadings and the evidence, only the ultimate facts in issue need be found. *Schmoldt v. Loper* (1921), 174 Wis. 152, 182 N. W. 728. From a careful examination of the questions on which it is claimed no findings of fact were made it is considered that most of the evidentiary

facts, if not all of them, are covered in some manner in the findings, and the ultimate finding that there was no fraud on the part of any of the defendants is sufficient to make it unnecessary for the court to have made findings on the questions complained of by this appellant.

Appellant's contentions that certain of the trial court's findings of fact are against the clear preponderance of the evidence are numerous, and we do not propose to consider each one separately. This appellant draws inferences from a number of normal business transactions made in the ordinary course of business between Cream City Wrecking Company, of which Sabatinelli was president and managing officer, and Northwestern Iron & Metal Company, of which Harry Harris and his family were sole stockholders, and Harry Harris personally. The evidence shows that Harris was engaged in the business of loaning money and financing business ventures, and Cream City Wrecking Company was engaged in wrecking buildings and selling building supplies. At the time of the transactions in question Harris had his business office in Chicago, Illinois, and Cream City Wrecking Company was engaged in business in Milwaukee, Wisconsin. Each transaction was separate and independent. All of them were consistent with the particular business in which they were engaged. When Sabatinelli, on behalf of Cream City Wrecking Company, desired to obtain the Fisk Rubber Company property and wreck the building and sell the material, he was without funds with which to finance it. Appellant would draw the inference that by reason of Harris requiring additional security from Sabatinelli and Cream City Wrecking Company for the repayment of the money advanced to purchase the property, that this was the beginning of a fraudulent conspiracy to defeat creditors. This does not follow, as it was only good business on the part of Harris to demand as additional security a chattel mortgage on the Northwestern caterpillar crane and

two trucks. A mortgage may be given for the purpose of indemnifying another against a future and contingent loss or liability. 14 C. J. S., Chattel Mortgages, p. 646, sec. 40. The court found, upon ample evidence, that there would be a loss in the business venture. The fact that Harris saw fit at a later date to release the crane upon conditions prescribed by him is no proof of fraud.

The loan of $5,000 in cash to Cream City Wrecking Company was a separate transaction, and there is no evidence that Harris had any knowledge of what the mortgagor intended to do with the money. A demand by Harris of an agreement that he receive one half of the proceeds of a sale of the property in excess of $7,500 in addition to the mortgage, together with an option to purchase the property at any time during ten years, and there being no evidence that Cream City Wrecking Company was insolvent, or caused to be insolvent by making this loan, is sufficient to sustain a finding that there was no fraud in this transaction. Some question is raised as to the authority of Northwestern Iron & Metal Company to do business in Wisconsin at the time this loan was made, which we consider has no merit.

Appellant argues that the defendant Stern was attorney for Harris, Northwestern Iron & Metal Company, Sabatinelli, and Cream City Wrecking Company at different times and in separate transactions, and was attorney for Hirsch, assignee for the benefit of creditors of Cream City Wrecking Company, which furnished him with knowledge whereby he could and did assist these defendants in committing a fraud upon the creditors of Cream City Wrecking Company. We have examined the evidence very carefully, and consider that Stern at no time represented inconsistent interests or did anything unprofessional or inconsistent with his duties as a lawyer. There was never any question as to the client he represented in any transaction. The services which he rendered were well

and competently performed. Any inference of fraud on his part is not sustained by the evidence.

There is no evidence on which it can be found that Hirsch, as assignee for the benefit of creditors of Cream City Wrecking Company, did not act in good faith, or that he conspired with any person or persons for the purpose of hindering, delaying, or defrauding creditors. Without attempting to restate all of the facts, it appears that at the time he was appointed assignee of Cream City Wrecking Company, Hirsch did not know Sabatinelli or Gronik, who purchased the assets for him; that he appointed appraisers of the assets, whose ability and integrity are not questioned; that he gave proper and ample notice of the sale of the assets, and conducted a public sale where there were numerous bidders, and the sale was fairly and honestly conducted. This appellant infers that there was fraud because the assets were purchased by Sabatinelli for much less than the appraised value. Sabatinelli had a right to purchase the assets, and in his testimony explains how he obtained the funds, which the court was warranted in believing. The fact that the real estate was sold for much less than its appraised value is not unusual in a forced sale of this kind. It was a special type of property and had conditions attached to the title which did not make it a highly desirable purchase.

There is no direct testimony or evidence establishing an agreement between the alleged conspirators, and there is no writing or correspondence between them which would indicate a purpose to defraud the creditors. The assessment by the collector of internal revenue of an additional income tax for 1933 in the sum of $5,822.37, together with the loss sustained in the Fisk project, appears to be the occasion of Cream City Wrecking Company making an assignment for the benefit of creditors.

Additional contentions of this appellant have been fully considered, but no useful purpose will be served in further discussing them, as they do not change the conclusion reached. A careful examination has been made of all the evidence, and it is considered that there is ample evidence to sustain the findings of fact and conclusions of law of the trial court.

The trial court taxed costs in favor of each of the defendants under sec. 271.02 (2), Stats., which provides:

"In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the court may award to the successful party such costs (exclusive of disbursements) not exceeding $100, as the court deems reasonable and just, in view of the nature of the case and the work involved. . . ."

It is claimed that this is one action, and the total costs that can be allowed to defendants is therefore limited to $100. While it is alleged in the cross complaint that all of the defendants entered into a conspiracy with the fraudulent purpose of hindering, delaying, or defrauding creditors in the collection of their claims, the purpose of the action against the several defendants was to set aside an alleged fraudulent conveyance and to annul alleged fraudulent obligations, and applied to each defendant only so far as their interests appear. It is in fact a joinder of several causes of action to avoid multiplicity of suits. There were separate issues to be tried as to each defendant, which distinguishes this case from the usual case where all of the defendants have a like interest in the issues involved. This was a long and involved trial, the record consisting of 1,586 pages and 238 exhibits. The trial court was in a position to determine the amount of work necessary to be done on behalf of the separate interests of each defendant. It is considered that the trial court had authority in his

discretion to tax costs in favor of each defendant. The judgment as to this appellant must be affirmed.

It follows that the plaintiff is not entitled to a lien for down payment, maintenance, and taxes paid. Plaintiff claims he should be entitled to redeem from the mortgage if fraud is not established. The foreclosure action entitled "Northwestern Iron & Metal Company, plaintiff, v. Cream City Wrecking Company *et al.,* defendants," affecting this property was commenced more than a year after the assignment for the benefit of creditors of Cream City Wrecking Company. Plaintiff did not oppose this action nor did he desposit the balance of the purchase price in court and seek to have the court determine who was entitled to the money. It is considered that the foreclosure action is *res judicata* as to the plaintiff.

*By the Court.*—Judgment affirmed.

The following opinion was filed May 15, 1945:

BARLOW, J. (*on motion for rehearing*). The motions for rehearing lay considerable stress upon the right of Sabatinelli to purchase the assets of the corporation of which he was an officer, and question the statement in the opinion that Sabatinelli had a right to purchase these assets.

While some courts hold that a corporate officer or director, because of his fiduciary relationship to the corporation, does not have a right to purchase the corporate property at a judicial or other public sale, the weight of authority is that purchases of corporate property by officers at public sales are valid, provided all the circumstances indicate good faith and fairness on the part of the purchaser. 76 A. L. R. 446, and cases cited.

In this case, an assignee for the benefit of creditors intervened and conducted the sale. The evidence shows, and the trial court found, that there was good faith and fairness on the

part of the purchaser. The purchaser and the trustee established the *bona fides* of the transaction. 76 A. L. R. 458, and cases cited.

The court has thoroughly considered the other questions raised in the motions for rehearing filed herein, and is not disposed to modify its views or to restate or amplify its opinion in any respect, except as above.

*By the Court.*—Motions for rehearing denied, without costs.